PORTO RICAN LEAF TOBACCO COMPANY, APPELLANT, v. REGISTRAR
OF GUAYAMA, RESPONDENT.

APPEAL from a Decision of the Registrar of Property Refus-
ing to Record a Contract for Agricultural Financing and
Mortgage.

No. 310.—Decided March 13, 1917.

AGRICULTURAL FINANCING—RECORD OF TITLE—LEASE—USUFRUCT.—Although sec-
tion 14 of Act No. 37 of March 10, 1910, which was not amended by Act
No. 59 of March 9, 1911, provides that the property need not be first recorded
in the registry of property in order to record contracts for agricultural
financing in the registry of such contracts, nevertheless when a property
is recorded in the registry of property in the name of a particular person
another person as lessee or usufructuary cannot enter into a contract for
a loan secured by the products of said property without proving that he is
such lessee or usufructuary and the terms and conditions under which he
holds, as is deduced from section 3 of the said Act. In the absence of the
document witnessing the lease or usufruct of the tenant, it is sufficient that
the owner of the property affected by the lease or usufruct agree to the
contract for agricultural financing.

ID.—AUTHORITY OF REGISTRARS.—The authority of registrars to pass upon the
validity of documents sought to be recorded and upon the capacity of the
parties thereto, which is recognized by article 18 of the Mortgage Law,
includes contracts for agricultural financing, and in order to pass upon
said capacity they must examine the documents attesting the same.

The facts are stated in the opinion.

*Mr. Luis Muñoz Morales* for the appellant.

The respondent appeared *pro se*.

MR. CHIEF JUSTICE HERNÁNDEZ delivered the opinion of
the court.

By public instrument No. 97 executed before Notary Luis
Muñoz Morales on September 5, 1916, in the city of San Juan,
the corporation known as the Porto Rican Leaf Tobacco Com-
pany entered into a contract with Alfonso Ortiz Utset for
the planting and cultivation of tobacco and for advances of
funds for that purpose, to be secured by mortgage. Ortiz
bound himself by the said contract to prepare, plant and cul-
tivate sixty *cuerdas* of tobacco for the crop of 1916–17 on four
properties described in the said instrument under letters *a*,
*b*, *c* and *d*, or twelve *cuerdas* of the first, ten of the second,

twenty-eight of the third and ten of the fourth, and in order to meet the expenses of seed, preparation of the land, planting, cultivation and harvesting the tobacco, the said corporation made Ortiz an agricultural loan of $4,800 on the conditions stipulated in the said instrument, Ortiz guaranteeing the payment of the same with the tobacco to be harvested, and, in his own right and as attorney in fact of his wife, he created a first mortgage on property *a,* containing 38.42 *cuerdas,* situated in Rincón ward of the municipal district of Cayey.

In reciting the titles under which Ortiz held the four properties, the said instrument expressly states:

1. That property *a* belongs to Ortiz by purchase from Reparada Nogueras López, according to deed No. 165 executed before Notary Francisco Navarro Ortiz in Barranquitas on August 19, 1916.

2. That property *b* belongs to Pedro Vázquez García and Ortiz is entitled to its possession as usufructuary until July 5, 1917, according to mortgage deed No. 126 executed on July 5, 1916, before Notary Francisco Navarro Ortiz in Cayey.

3. That property *c* belongs to Petra Hernández Rodríguez and her children Carlos, Josefa and Esteban Antón Hernández and was leased to Ortiz by Petra Hernández Rodríguez in her own right and as special representative of her said children for a period of four years, beginning June 30, 1916, according to deed No. 124 executed before Notary Francisco Navarro Ortiz in Cayey on June 30, 1916.

4. That property *d* belongs to Francisco Fernández Navas and was leased to Ortiz by Francisco Fernández Colón, as general attorney in fact of Fernández Navas, for a period of nine months and seven days, beginning August 24, 1916, and ending May 31, 1917, according to a private contract of lease executed by the lessor and lessee in Cayey on August 24, 1916.

Upon presentation of instrument No. 97 of September 5, 1916, for record in the registry of agricultural contracts

of Guayama, the same was admitted to record as to property *a*, but its admission to record was denied as to the other properties for the reasons stated in the following decision:

"The preceding document, accompanied by an exhibit, is admitted to record in the Registry of Agricultural Contracts as to the property described therein under letter *a*, on the reverse side of page 103 of Vol. 1 of Cayey, property No. 24, entry 'C'; but is denied admission to record as to property *b* because it appears of record in the name of Pedro Vázquez García and the character and authority of Ortiz Utset as usufructuary thereof are not shown; as to property *c* because it appears recorded in the name of José Antón Blasco, and as to property *d* because it is recorded in the name of Francisco Fernández Navas and Ortiz Utset has not established his character and faculties as lessee thereof. A cautionary notice is entered in lieu thereof, etc."

The Porto Rican Leaf Tobacco Company appealed from the above decision as to the denials of admission to record contained therein.

We are of the opinion that as properties *b, c* and *d* are respectively recorded in the Registry of Property of Guayama in the names of Pedro Vázquez García, José Antón Blasco and Fernández Navas, Alfonso Ortiz Utset should have proven to the registrar his character and faculties as usufructuary of property *b* and as lessee of the two properties *c* and *d*, and more particularly as to property *c* because it is recorded in the registry of property in the name of José Antón Blasco, contrary to the statement made in the deed of September 5, 1916, that Petra Hernández Rodríguez and her children Carlos, Josefa and Esteban Antón Hernández were the owners of that property.

It is true that under the provisions of section 14 of Act No. 37 of March 10, 1910, which section was not amended by Act No. 59 of March 9, 1911, in order to record agricultural contracts in the registry created for that purpose it is not necessary that the property should be first recorded in the registry of property, and the object of the said legislation was to encourage the development of local credit and

facilitate the making of such contracts in favor of landholders having no recordable titles. But it cannot be held that when a property is recorded in the registry of property in the name of a particular person, another person claiming to be a lessee or usufructuary may enter into a contract for advances secured by the products of the land without proving that character and the extent of the same. It might be that the contract securing the advances with the products of a property held by a tenant as lessee or usufructuary would be incompatible with the duration and terms of the rights granted to the tenant in either of the said conceptions. Hence the necessity that the registrar should ascertain the nature and extent of said rights by examining the instrument creating the lease or usufruct when there is such instrument, as in the present case, and a mere reference thereto is not sufficient. In every case the express assent of the owner of the property to the security offered by the lessee or usufructuary will suffice.

Act No. 37 itself sustains the foregoing doctrine in providing in section 3 that any landholder, whether as owner, possessor, lessee or usufructuary of rural properties, may enter into a contract for advances for agricultural purposes with a third party, as described in section 1 of said act; but if such landholder is a lessee or other temporary usufructuary, the contract for advances shall not extend beyond the term and conditions attached to the rights of such lessee or usufructuary in and to the land. How is the registrar to know that the lessee or usufructuary has not exceeded the term and conditions attached to his rights?

The answer is obvious. Either by examining the instrument which created the lease or usufruct, or, when there is no such instrument, by the assent to the contract of the owner affected by the lease or usufruct.

The power of registrars to pass upon instruments presented for record or annotation and the capacity of the parties thereto, which is recognized by article 18 of the Mortgage

Law, extends to contracts for advances for agricultural purposes, and in order that they may pass upon such capacity an examination of the instruments witnessing the same is obligatory.

The decision appealed from should be

*Affirmed.*

Justices Wolf, del Toro, Aldrey and Hutchison concurred.